The U.S. is a global leader in the field of antiviral drugs. The U.S. has been a leader in the field of antiviral drugs since the early 2000s.  The next argued case is No. 19-1435, Spigen Korea Co., Ltd. v. Ultraproof, Inc., Mr. Curry. Thank you, Your Honors. I'll first address Spigen's appeal of the obviousness decision, because if that is decided in our favor, we believe that the cross-appeal, a no-exceptional case, will be moot. The district court erred in its application of the obviousness test for design patents at the summary judgment stage and by taking multiple fact issues away from the jury. At Step 1A of the obviousness test, the district court incorrectly viewed the Spigen design patents at too high of a level of abstraction as conceptually just a cell phone case with rounded corners, beveled edges, and cutouts to plug devices into. This is what led the district court to err on the remaining steps of the obviousness test and to take issues away from the jury. At Step 1B, when the district court was looking for a primary reference that is basically the same as the claim design, it looked at the 218 prior art. But as you can see in the images in our brief, that reference is not basically the same. I'll go through this in a little bit more detail, but it has at least 10 key differences. There were just two differences in the Campbell Soup case where this court said that a primary reference wasn't a proper primary reference. At the second step of the obviousness test... Well, how far does one have to proceed into detail? When we're talking about appearance, we've got the appearance. It's flat, it's got rounded edges, it's relatively thin, and you've got references that essentially show that with minor differences. Well, respectfully, Your Honor, they aren't minor differences in appearance, and I think I can show this to you relatively easily if you'll look at page 37 of our blue brief and you'll compare Spiegan's 648 patent to the 218 primary reference. Spiegan's design patents have two parts. There's an outer shell and a frame, and in the 648 patent, the outer shell is the only part that's claimed. The frame's actually shown in dotted lines. When you compare the outer shell of the Spiegan design patent to the 218 reference, it's plainly evident that the designs aren't the same. There's no shell at all in the 218 design patent. The reference is supposed to be the primary reference. There's also no portion of the frame that extends above and below the shell in the 648. Well, once again, if we're talking about appearance, how detailed does one have to get in comparing two things to find differences? Well, so take Jor, for example, which is the drill bit case. The only difference between the patented design and the prior art there was a smooth cylindrical shaft versus a hexagonal shaft with a little divot in it. That was a difference. It didn't disqualify that reference as a primary reference, but that was a difference. That was an obvious difference in design, and that's exactly what's going on here. If a person of ordinary skill, an ordinary designer, looks at the 218 and the 648 patent, they don't see things that are similar at all. They see in the 218 a very bulked-up reference with these triangular design elements all the way around its chamfers. It doesn't have the parting lines. It doesn't have the hole in the back. It has much thicker chamfers and much thicker sides. It's just not visually the same. That's the problem. As this court knows, in the design patent obviousness test, if there's not an appropriate primary reference, that's where the analysis ends for the combination. Switching back to the secondary reference, AlterProof identified the 209 patent as an appropriate secondary reference. The 209 patent is shown on page 46 of our blue brief. We don't think the design similarities between the 209 patent and the 218 patent are similar enough for those two references to be combined. If you look at the 209 patent, it's got a softly radius-rounded aesthetic. It basically hugs the phone. The 218 patent, on the other hand, is way at the other end of the spectrum. When you go to a store to buy a smartphone case, if you look at the 209, you are not going to think that it looks basically the same as the 218 patent. Those are not combinable right there off in the back. The 218 also doesn't have a two-part construction. It doesn't have an outer shell and a frame. If you look at the design elements, some of the same differences that preclude the 218 from being an appropriate primary reference for the patents also knocks out the 209 as an appropriate secondary reference. We're talking about obviousness here. Yes, Your Honor. Not lack of novelty. And you look at 218, it's thicker than 607. But you look at 209 and it's thinner. And so isn't 607 sort of a mesh of the two of them? The speaking design patents are probably fairly characterized as being in between the 218 and the 209. The problem here is the 218 and the 209 are far too apart on the spectrum to be combined. And even if you did combine them to get to the hypothetical design that AlterProof got to here, if you go to page 53 of our blue brief, you'll see the hypothetical design that they came up with. And there's actually a legal error here. The way that you're supposed to do design patent obviousness is to find something in existence in the prior art that's basically the same as the patent. And then you're supposed to look for a secondary reference that has certain ornamental features that themselves suggest modifying the primary reference. Well, that's not what happened here. So if you recall, the 218 patent had, for example, prominent triangular elements on it. The hypothetical design doesn't have those. Those are just omitted. The 218 patent also had a notch cut out of the bottom. The hypothetical design, again, omits that change. So what they've done here is they've done exactly what you're not allowed to do under Borden. They went to the prior art and they said, look, we can just pick and choose different features that exist in the prior art and combine them together to create this hypothetical design. That's error. That is not the right way to do a design patent obviousness test. And your honors, even if it was, look at the designs on page 53 of our brief. Once you have the hypothetical design construed, the question is actually an ordinary observer question. So would an ordinary consumer be confused and be deceived and think that the hypothetical design is the same, substantially similar, the same in all material respects as a design patent? If you were standing at a store holding those two designs in your hands, you're not going to confuse them. So there's at least a material issue of fact right there, even if their hypothetical design is correct, which we don't think that it is. So the court erred by taking that away from the jury. And even if you got to. Do you have to have a reference that's a good primary reference before you can have, that's basically the same before you can look at a secondary reference? Yes, your honor. That's what the Apple, the Samsung case says. That's what high point one and two both say. That's what MRC says. You have to start with an appropriate primary reference. And that's a big problem here for UltraProof, because the 218 is not. What's the problem, that there's no translation of the device, more than just cursory language as to how they're basically the same? I'm sorry. Could there have been more from the court as to how they're basically the same or not? I think there probably should have been more analysis, but I think the real error by the district court there was the same error that the district court made in high point, both high point one and two. The district court here below just looked at the Spiegel design patents as rectangular cell phone cases with beveled edges and cutouts. But that's just a general description of a smartphone case. But it should have done it. Well, it should have looked at the actual design elements of the Spiegel design patent. And so if you look at the Spiegel design patents, which are shown in a sort of profile view 36 to 37 of our blue brief, they have a tough angular appearance, but they're still relatively streamlined. So they're not bulked up like the 218. So they don't look like, for example, Your Honor might know the OtterBox case. They don't look like a big bulky case. They're also not very, very thin like the 209 patent, which is basically just hugging the smartphone. So overall, that's where you need to start. They have a different aesthetic. Some of the other features of the Spiegel design patents are they're a two-part design. You can see that very clearly by looking at the figure. There's an outer shell, which is the only thing claimed in the 648 patent. It wraps around using a medium chamfer, which is that beveled edge in the back surface on the side. And it only comes partially the way around. So there's a little bit of the frame sticking out on the side and out at the front. There's also a hole cut in the outer shell and the frame on the back. There are parting lines because of the outer shell on the back. They give a distinctive horizontal appearance to those parting lines. And then there's a design element above and below those parting lines. I already mentioned the medium-sized chamfers. The other notable design feature of the Spiegel patents are the trapezoidal buttons. You'll see there's a very specific button design on the sides of the Spiegel design patents. It actually extends into the back chamfer. So those are the things, that's the level of detail that the district court needed to go into when it was discerning the correct visual impression created by the patented design as a whole. If the court had looked at the design patents in that level of detail, I think the court would probably have then appreciated what the differences are with the 218 patent. It's a lot more evident, and it's much easier to see the differences once you understand the correct visual impression, which is, as Your Honor points out, that's the first thing that needs to happen in the process. It almost looks like the 209 patent could have been the primary reference. Because you've got the aperture and you've got the stuff on the side, and so add 218 and you just make it a bit thicker. Well, there's still a problem with that, Your Honor. For the reasons that I talked about, the 209 and the 218, they're not similar enough to combine. But let's just start with the 209. That wasn't raised below. They could have raised the 209 as a primary reference. They didn't. Their combination was 218 plus 209. So they didn't preserve that. So the district court didn't consider it. We didn't get to argue against it below. We didn't get to have our experts submit testimony on it. So they can't just switch it up on appeal and say, oh, well, you know, it's basically the same, so that's fine. What would an expert bring to this issue of the appearance of a cell phone case that one can look at very easily? Well, respectfully, Your Honor, there is a huge industry for these, millions of dollars a year, and lots of companies are in it trying to design products. And lots of prior art. Yes, there is. There is a lot of prior art. The problem is you have to apply the obviousness test here, and what Spigen did was went into an area of the prior art that wasn't captured. So Spigen didn't design a big brutish case at one end of the spectrum or a really thin case that hugs a smartphone at the very far other end of the spectrum. Spigen designed something that was in the middle, something that was not disclosed in the prior art, and something that you can't reach through suggestion in these drawings. So that's the problem here, Your Honor, and I do think that an expert can contribute to this because having sat with an expert and started to talk to them about these design elements, our expert tells us that the 209 is just not similar. It's very thin. It doesn't have those angular corners. So it doesn't have that beveled edge. It doesn't even have that feature at all. The design on the top and the bottom above the outer shell on the back of the case is different. It's a rounded, softer radius design. It just doesn't look similar to the Spigen design patterns. Would I grant, Your Honor, that the 209 might be a more appropriate primary reference? Sure, but that's not the argument that they raised. And then for what it's worth, we didn't present this exactly this way to this court. Below, we said the 209 wasn't even prior art. The district court rejected us on that because we didn't have an assignment filed with the Patent Office. We found that co-inventor, former employee, and we now have that assignment. So if this goes back down, the 209 will be removed as a prior art reference, so it won't be an appropriate prior art reference. If I can, Your Honors, I want to go to the secondary considerations because part of the problem here is, especially in a crowded field like this, you need to look at secondary considerations. So I'm absolutely not conceding that the hypothetical design is correct, but even if it was, there is a fact issue presented here just by the secondary considerations. We showed below that Spigen has sold tens of millions of dollars worth of the patent design because of the way that it looks. Amazon customers tell us they buy it because of the way that it looks. Our expert cited that in his report. The district court rejected it for lack of nexus. Well, he did so inappropriately because if you look at the Crocs case, which is 598 Fed 3rd, 1310 to 1311, you make a prima facie case of nexus when you show that there's commercial success and the product embodies the patent. We did that here, and the Amazon reviews go even further because people are saying they bought it because of the design. Our expert also said that there was teaching away, and this is very similar to the argument I made before. The 218 is a big brutish case at one far end of the spectrum. The 209 is a thin, hugging case at the other end of the spectrum. How can there be teaching away when you're dealing with appearance? Does something have to say, this is ugly? You could do that. You wouldn't use this? It does have to discourage someone, but the point is that you need to look at what motivation the images and the visual appearance suggests in the design patents. So when you look at the 218, what that's suggesting is big, bulked-up appearance. Very big. When you look at the 209, it's suggesting very thin, very tightly tailored. So they're suggesting opposite ends of the spectrum. There's also evidence of copying here. We asked during discovery, how did you make the case? And basically, the owner of Ultraproof said, well, we sent a case to China and said, copy this. They say it wasn't our case. Absolutely not. But they produced absolutely no design drawings or anything else to show how they made the case. And if you look at the beginning of our blue brief, you'll see that there's striking similarity between the patent of the design and the accused product. So that's prima facie evidence of copying. Every one of those elements also creates a fact dispute. And just to sum it up here, there's a fact dispute on whether the reference, the primary reference, is basically the same. There's a fact dispute about whether you can combine them. There's a fact dispute about what the hypothetical design looks like. There's a fact dispute about whether the hypothetical design is exactly the same. And there are these secondary considerations. And I'll reserve the rest of my time. Thank you. Mr. Gamble. Good morning. May it please the court, I'd like to begin by just addressing a couple of mischaracterizations from opposing counsel. The 209 patent versus the 218 patent as a primary reference. Both combinations were actually presented to the district court below. If you look at Appendix 373 to 374, that's our summary judgment brief, we present the 209 patent as a reference that is basically the same as the asserted design patents before we even address the 218 patent. We then later go on and say that the 218 patent provides all of the necessary elements that are missing from the 209 patent. And then we discuss our expert's report, we'll apply them in the opposite order, apply the 218 and adding the elements from the 209 patent. So the same combination in both orders was presented below. The assertion about the 209 patent not being a suitable prior art reference relates to whether it was commonly owned or under duty or obligation to assign at the time of the filing. Today is the first time we've ever heard that there was actually an assignment regarding that patent. It was never brought up in the underlying case, it was never brought up in briefing in this case, it was never brought up during mediation in this case, it was never even emailed to us prior to today. So a very basic application of Rule 37 and excluding evidence that wasn't presented during discovery would absolutely keep the 209 patent as a valid, viable reference to the designs asserted in this case. Now the unique facts of this case separate it from the typical obviousness analysis of an asserted design patent. In this case, the two references applied in the analysis include the inventor's own prior file patent, that's the 209 patent, and a competitor's phone case that's specifically referenced in the inventor's own conception drawing, that's the 218 patent. As such, what is ordinarily a purely hypothetical combination, much more closely tracks the actual design process of the asserted patents in this case. The inventor had his 209 patent and had the 218 patent, which he refers to as the lunatic case in his conception drawing, combined the teachings of those and came up with the asserted designs in this case. Now whether we consider the 218 patent or the 209 patent as the primary reference, the other becoming the secondary reference, resulting combination is the same. Spiegel argues the 218 patent is not a suitable primary reference, but even just now seems to appreciate and admit that the 209 patent is a viable primary reference. Now the idea that the one... But he's arguing that that point was not made below. In these cases, you first have to identify a single reference, the primary reference. And I flatly disagree with that. At appendix 373, we discussed... You disagree with what I said or what he said? With what counsel is saying. At appendix 373, we specifically discussed the 209 patent and say it's basically the same as the asserted design patents. And we say the differences are the radius edges versus chamfered edges and the buttons. And we say that the 218 patent is a suitable secondary reference, which provides all these missing elements. The 209 patent has the two-piece case, the parting line at the top, the parting line at the bottom, the circular cutout in the back. It's a relatively thin case. The idea that these are on opposite spectrums of this design process of a relatively thin case versus a thicker, more protective case is actually the motivation itself to combine them. Maybe you can draw elements from one to the other and come up with this something in between, which is what they're saying the asserted design patents are. But this is summary judgment. So you need to overcome the drawing of adverse influences. I'm sorry, could you repeat? The district court granted summary judgment. Correct. Isn't that right? Yes. So that any inferences need to be drawn in their favor, not in your favor. And I would argue that the only fair inference that can be drawn from the evidence that was presented, including the fact that the 209 patent shares the same inventor as the asserted patents, is Spigen's own prior design. And the 218 patent is specifically referenced by its commercial embodiment in the conception drawings. The only reasonable assumption that can be drawn from those is that the inventor had these designs in mind and came up with a reasonable combination of the two, which resulted in the asserted design patents. The conception drawing, by the way, is at appendix 5893. And as you can see in that, it specifically references the lunatic case, which again is the commercial embodiment of the 218 patent, and references it for dimensions, references it for the size of the case. So, again, you start with the 209, which is the inventor's own prior case. You look at the lunatic case, which is the 218 patent, and you say, look at these dimensions. These are where I want to be. And you combine the two, and you end up with the asserted designs. So did the district court actually consider the question of whether the two references could be swapped? He did not discuss it in his opinion. That wasn't part of the judgment, correct? Correct. But it was absolutely presented to him as alternative grounds that the panel can affirm his judgment, his underlying judgment. But if the court didn't address it, we can't rule on that. I think it was presented to him. Your de novo review of the grant of summary judgment can rely on alternative grounds that were presented to the district court, including just swapping the two references. Again, it's really a form over function issue here, because the resulting combination is the same, whether you call one the primary reference and the other the secondary reference. It just seems to me that if that's the case, then almost in all these cases, that would be a primary argument that would be made, that here's your primary reference, here's your secondary reference. And by the way, you can switch them around, so it doesn't matter which is primary and which is secondary. That doesn't seem very correct to me. Well, it may not be in all situations where you have art like this, where all of the art is very interrelated. And in fact, the facts of this case are somewhat unique, in that the two references are specifically related to the design process. One is the inventor's own prior design, and the other specifically referred to in his conception drawing. You don't usually have that. Usually you're drawing from prior art that you assert, yeah, a person of honorary skill would be aware of this prior art, but there's no actual evidence that the inventor himself or herself actually was aware of that reference. And so you can't actually track the design process. Here we can specifically track the design process. We can start with Mr. Kim's 209 patent, add the lunatic reference that he refers to in his conception drawing, and the end result is the hypothetical design that our expert presented and that the district court held obviates all the asserted patents. Again, the overarching theme between these two references and the third reference that's discussed in our summary judgment brief, the slim armor, is that they were all related to the inventor. He either specifically referred to it as the case of the 218 patent, or they're his and his company's own prior designs. The slim armor is Spigen's prior design dating back to, I believe, 2011 or 2012. The slim armor is a case. It's a rectangular case with rounded corners, chamfered edges, a two-piece case with a parting line at the top, a parting line at the bottom. The only difference there is a couple of minor differences in the buttons and the circular cutout on the back. And these differences aren't major differences. Most of them are actually dictated by the function of the underlying phone. Every year that phone companies come out with new phones, the screens get bigger, the bezels around the screen get thinner, the phones get thinner. And so you have to make modifications to these cases to then accommodate these new phones, including thinning out bezels or beveled edges so that more of the screen is visible through the opening in the front, and thinning out the cases overall so that they can accommodate these thinner phones. Now, as to our cross appeal, Spigen misconstrues our argument and how the court abused its discretion below. We do not contend that the district court was required to provide a lengthy, detailed analysis of the many grounds for exceptionality that were presented. However, we do contend that it was an abuse of discretion for the district court to ignore those grounds we presented and instead present a discussion of different grounds, essentially setting up a straw man argument, leaving this court with no actual analysis of the arguments that we presented and thus nothing to defer to. And then finally, before I reserve my time, as to the standard of proof, requiring alter proof to prove any aspect of exceptionality beyond a preponderance of the evidence would be contrary to octane fitness. There was some discussion in the briefs that... Look, we owe substantial deference to a district court who presided over the proceeding and saw all the alleged improprieties and whether we agree with you about some of them or not, we owe a lot of deference to the trial court. Sure, but here there's no indication that the trial court actually appreciated or even considered the evidence that we presented. He held a co-hearing with our case and the case against Eye Speaker that you just heard as the companion case. He intermixed the arguments between the two. He actually, at one point, asked Eye Speaker's counsel whether he was asking for fees from both cases. And the indication was that he wasn't reviewing the cases independently. And then when the orders came out the next day, they were virtually identical. Now, obviously, the conducts of the case in the two cases, or the parties in the two cases, was not identical. The patents being asserted were not identical. The conduct of the parties were not identical. We had to file two separate... They have different counsel on appeal here. Was the counsel different at trial? It started out with the same counsel until we moved to disqualify him because, as you heard just a while ago, Spigen did not appreciate the duty to disclose prior art, relied on the Patent Office to find prior art, and relied on its patent attorney to decide whether to produce prior art or not. One particular reference that was very important with regard to the utility patent was the Korean Utility Model 465, I think is the number. And Spigen acknowledges that he was aware of that, did an analysis of that patent, did not disclose that to the Patent Office based on the conduct of its prosecution counsel solely. The inventor had no involvement in that at all, so he became the only witness that was available to testify about that. When we sought to depose him then, they pushed back saying, well, he's litigation counsel. He can't depose litigation counsel. He's not litigation counsel in this aspect. He's the only witness that can testify about the decision to withhold prior art. Yes, sir, and the district court didn't go through all of this. Absolutely. He used the right words. He said totality of the circumstances, the preponderance of the evidence, but he didn't actually analyze our grounds for exceptionality. He presented his own grounds and said that those grounds were not enough. And with that, I think those are my thoughts. Thank you. Counsel, there's a lot going on there that gives rise to the cross-appeal. There is, Your Honor. I think I can actually dispose of it relatively quickly. They're flat wrong that the district court didn't consider their specific arguments. If you look at the paragraph that breaks the page on Appendix 34 to 35, the district court specifically looked at Alterbu's arguments that it was, quote, entitled to attorney's fees because, among other reasons, plaintiff's committed an equitable conduct in filing a utility patent, plaintiff's true motivation in filing a case was to eliminate competition, plaintiff withheld evidence until the close of discovery, and plaintiff's overreaching conduct renders the case exceptional. The court listened to their arguments, considered their arguments, and properly applied the exceptional case standard. Well, is it reviewable by us without more detail? I think that it is, Your Honor, because you do also have the briefs there, and as Your Honor noted, this is an abuse of discretion standard. This court lived with this case for years. This court ruled on the alleged lie to Amazon, ruled on the disqualification of Chibiga's primary counsel, ruled on their attempt to disqualify our firm after we came in because one of my partners was the mediator who did no work in the case. The court was familiar with this case and said that based on the substantive strength of the litigating position and the way the case was litigated, which he listed out several of those things, and he said, among other reasons, he did enough. If you look at the UU Utah case, Your Honors, you'll see that the district court doesn't have to reveal, the judge doesn't have to reveal his or her opinion about every single consideration that's raised. What the judge has to do is go through and explain whether the case is exceptional or not, and the district judge did that here. He said that our positions were not frivolous. He said we had reasonable claims at the time on invalid patents. He found that we were reasonable in the way that we conducted the litigation because we sought to stipulate out issues, for example, and he found that awarding fees wouldn't have a deferred effect because, unlike the cases that they cite, there is no pattern here of speaking and trying to seek nuisance value settlements. So this is just not a case where the district judge abused his discretion in deciding that there was no basis for fees. One thing about the standard of review there, we don't contest that the standard of review for 285 is preponderance of the evidence. The issue here is about if there's a subsidiary finding of inequitable conduct, does inequitable conduct have to be shown by clearing and missing evidence? That's an open issue. We submit that no matter what standard applies, they haven't shown that there was inequitable conduct. The district judge said in his fees opinion he specifically considered that argument and didn't find that they showed it. I want to go back for just a second to the design patent appeal. What's going on here, Your Honors, is they're doing the obviousness test backwards. They're looking at what the inventor considered, and they're using hindsight to try to construct a design that looks as similar as possible for design patents. The PTO had before it the commercial embolliment of the 218 patent and did not reject Spigen's design patents. So the PTO did not think that the Spigen design patents were basically the same as the 218 design. The Patent Office also had the Slim Armor case before it, which is the other alternative ground that they didn't raise that they're trying to bring up now and, again, didn't reject the Spigen design patents over it. I do want to come back very briefly to their preservation of the 209 argument. Here's all they said. It's actually on page 376 of the appendix, quote, obviously the reverse is also a suitable combination that would result in the same hypothetical design. That's just not enough to preserve it. They didn't explain why the 209 was basically the same. They didn't explain what features of the 218 would be incorporated, and they didn't explain any motivation or reason or cite any evidence to show why, even if you did combine the references, that you would eliminate certain features that were there in their base reference and their base primary reference, whether it's the 218 or the 209. That's just not an appropriate obviousness analysis. That's a legal issue right there by itself that, even if you disagree with it and everything else, mandates reversal. I also want to point out something about the summary judgment standard. Judge Newman, you brought this up. We cited in our briefs that facts are reviewed for queer error. That was a mistake on our part. Facts are reviewed for queer error when there's been a trial or a bench trial. There's been no trial here. So the normal summary judgment standard applies, and the only thing the district judge is supposed to do is figure out whether there's a material dispute of fact. You can look at the L.A. Geer case for a detailed discussion of all of that, but it's evident that the district judge here, at each step, 1B, 2, the hypothetical design, secondary considerations, took fact issues away from the jury. So, respectfully, we submit this case needs to be reversed. Thank you. Thank you both. The case is taken under submission. Do you cross-appeal? He has little time, and it's cross-appeal. Oh, that's right. You do have a couple of minutes to cross-appeal. Thank you. As to the fees issue here, the district court has not given this court enough grounds to review. There's not a record that can be looked at with regard to most of the grounds that we raised. Notably, there's no discussion about the strength of the case. One of the patents that was held invalid is the 099 patent. It has not been appealed here because, frankly, there's no dispute that that patent is invalid. We responded that way initially before we even answered in the underlying case. We had a claim chart. We had prior art that was cited showing that the 099 patent was invalid. The 099 patent claims a protective screen on the front of the case. Otherwise, it's essentially the same as the other cases. The accused product, instead of having just a screen, has a screen with this big, thick plastic frame around it that then interacts with the other portions of the case. Looking at it as a design patent, they're just plainly dissimilar. As to the preservation of arguments issue, the quote that counsel just read is from several pages back in the brief. That's not cross-appeal. I apologize. Again, the district court didn't consider all of our arguments with regard to the exceptionality of the case. Notably, failed to consider the strength of the case at the time it was filed. Failed to consider the strength of the case later on as the case progressed. We had an RFA directed to Spigen that said that the two parts of the accused product that was accused of infringing the utility patent were glued together. All the claims require that the parts be removably mounted. Once they're glued together, they're not removable. Spigen tried to save their case by saying, well, you can break the glue bond. Breaking a bond is not removable. You couldn't reverse that then. Earlier you stated that the district court mixed up the cases. Did you argue that in your brief? It wasn't apparent to us in our brief. We submitted a brief regarding – in our brief here, I'm sorry. Here. I believe we discussed that. I don't have a specific quote off the top of my head, but I do believe that was discussed. I guess with that, we're done. Thank you. Again, thank you both. The case is submitted. That concludes our argued cases for this morning. All rise. The honorable court is adjourned until tomorrow morning. It's an o'clock a.m.